

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSEPH GEORGE ECKER, )
)
v. ) 1:10cr158 (LMB)
) 1:11cv1006 (LMB)
UNITED STATES OF AMERICA. )
)

MEMORANDUM OPINION

Before the Court is pro se movant Joseph George Ecker's ("Ecker" or "movant") Habeas Corpus Letter Title 28 Section 2255 ("§ 2255 Motion"), clarified by his Reply to Order ("Addendum to § 2255 Motion"), in which he argues that he received constitutionally ineffective assistance of counsel from his court-appointed attorney. He also requests an evidentiary hearing, and in separate filings, discovery.[1] The government has filed an Answer in Opposition to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 ("Answer"). For the reasons to be discussed below, Ecker's § 2255 Motion will be dismissed in all respects. This decision will moot Ecker's requests for discovery and an evidentiary hearing, which will be denied.

---

[1] On August 16, 2012, Ecker filed an Emergency Motion for Extension of Time [Dkt. No. 82], seeking leave to conduct discovery by propounding written interrogatories, which was denied. Ecker renewed that request in a September 6, 2012 Motion for Reconsideration [Dkt. No. 91].

## I. BACKGROUND

On May 6, 2010, Ecker was indicted for conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count I), distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) (Counts II, III, and IV), and health care fraud in violation of 18 U.S.C. § 1347 (Count V). Ecker was represented at all times by Assistant Federal Public Defender Aamra Ahmad ("Ahmad").

On June 16, 2010, Ecker entered into a written Plea Agreement with the Government in which he pleaded guilty to Counts I and V of the indictment and the Government agreed to move to dismiss Counts II, III, and IV. Under the terms of his Plea Agreement, Ecker waived his right to appeal his conviction and any sentence that did not exceed the statutory maxima for the statutes of conviction. See Plea Agreement [Dkt. No. 29] at § 6. Ecker also signed a Statement of Facts in which he admitted being part of a prescription drug trafficking conspiracy that "involved an amount of Methadone, oxymorphone, hydromorphone, and morphine sulfate that is equivalent to at least 3000 kilograms but less than 10,000 kilograms of marijuana." Statement of Facts [Dkt. No. 30] at § 15. The United States Probation Office used this mutually-agreed drug weight range to calculate a Sentencing Guideline Range of 188 to 235 months of incarceration. Presentence Investigation Report

[Dkt. No. 37], at 32. In the Statement of Facts Ecker also admitted that in less than one month of the conspiracy, he distributed 2,040 prescription narcotic pills, including methadone, oxymorphone, and hydromorphone, all paid for by Medicare in exchange for approximately $18,000. See Statement of Facts at §§ 6-14.

On August 27, 2010, Ecker was sentenced to a variant sentence of 120 months incarceration on Count I and 30 months incarceration on Count V, to run concurrently, to be followed by three years of supervised release, among other penalties. Ecker did not appeal either his convictions or his sentence and has timely filed his pro se § 2255 Motion.

## II. DISCUSSION

In his § 2255 Motion, Ecker alleges constitutionally ineffective assistance of counsel in connection with his guilty plea, his sentencing, and the failure to file a Notice of Appeal. See § 2255 Mot. at 2-3; Addendum to § 2255 Mot. at 1-4.

### A. Standard of Review

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To

prevail, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967). Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that were not appealed are deemed waived and, therefore, procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994) (applying standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral challenge. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998).

B. Ineffective Assistance of Counsel

To sustain his § 2255 Motion based on ineffective assistance of counsel, Ecker must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and

4

prejudice to the defendant. Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Such a determination "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Even if counsel's performance were deficient, to prevail, a movant must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome." Id. at 693-94. In short, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Ecker bears the burden of proving both deficient performance and sufficient prejudice in each of his ineffective assistance claims. Fields v. Att'y General of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).

1. Failure to Raise Voluntariness of Guilty Plea

Ecker's § 2255 Motion alleges that his guilty plea "was defective because it was unknowing and given under duress," and he contends that his attorney was deficient because she failed to "inquire[] into" or "disclose[] to the Court" aspects of his

5

"very painful and incurable neurologicl [sic] condition" that prevented him from voluntarily entering a guilty plea.[2] § 2255 Mot. at 1; Addendum to § 2255 Mot. at 2.

This claim is undermined by the statements of both Ecker, who was under an affirmation to tell the truth, and defense counsel during the Rule 11 plea colloquy, which must be accorded "a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."). Both Ecker and Ahmad were questioned as to the effect of Ecker's medical problems on the voluntariness of his plea, and both indicated that those problems did not impede Ecker's ability to understand what he was doing:

> THE COURT: Are you presently suffering any significant pain?
> THE DEFENDANT: Yeah, I'm in severe pain.
> THE COURT: Is the degree of the pain so high that it's making it difficult for you to concentrate or focus on these proceedings?

---

[2] To the extent that this claim constitutes a collateral attack on the voluntariness of his guilty plea, habeas review of Ecker's unappealed conviction on those grounds is inappropriate. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (citations and internal quotation marks omitted)).

6

> THE DEFENDANT: I'm able to concentrate sufficiently to proceed.
> THE COURT: And based on your medical problems and the degree of medication that you're currently getting, have you had any trouble in dealing with your attorney in terms of understanding what she has said to you about the case and talking with her about the plea? In other words, I want to make sure you're clear as to the impact, if any, of your medical condition and any symptoms of pain on your ability to understand this entire proceeding.
> THE DEFENDANT: I've had some difficulty staying on point, but I'm not at all sure that that's relevant.
> THE COURT: All right. Ms. Ahmad, have you had any difficulty in working with your client because of his suffering from chronic pain or from his medical condition?
> MS. AHMAD: No. I think we've been able to sufficiently discuss and he's asked intelligent questions about the plea papers, and I think he's understood my answers.

Tr., June 16, 2010 at 7:16-8:14. Ecker also specifically denied that any of his prescription pain medications negatively affected his ability to understand the plea proceedings:

> THE COURT: Are you in any respect feeling the effects of any medication to the degree that you're having any trouble in understanding these proceedings?
> THE DEFENDANT: No.
> THE COURT: All right.
> THE DEFENDANT: The biggest problem I have is pain, not the lack of.

Id. at 9:6-9:12.

Indeed, Ecker actively participated throughout the plea hearing, and the content and form of his statements banish any doubt that he did not comprehend the nature of his conduct at that time. For example, after assuring the Court that he could

7

read, write, understand, and speak English with proficiency, and had in fact attended a year of graduate school, see id. at 6:11-16, he reported that he was familiar with the Plea Agreement, described his communications with defense counsel, and adroitly raised a concern about the effect of pleading guilty to health care fraud on his future health care benefits:

> THE COURT: Now, before signing the plea agreement, did you read it over for yourself word for word?
> THE DEFENDANT: I did twice.
> THE COURT: All right. And did you have enough time to discuss the plea agreement thoroughly with your attorney?
> THE DEFENDANT: I did.
> THE COURT: And did you ask her all the questions that you have about the plea agreement?
> THE DEFENDANT: Yeah, I did.
> THE COURT: And did she answer those questions to your satisfaction?
> THE DEFENDANT: Yeah, I would say for the most part. There were some, there were some matters concerning forfeiture that she wasn't exactly sure of, but that's not particularly relevant to the plea agreement.
> THE COURT: All right. Are there any questions you want to ask me about the plea agreement?
> THE DEFENDANT: I would like clarification on one issue. Although it's not explicitly stated in the plea agreement, the government has been absolutely inflexible about which counts I plead to. Now, the fifth count, as I understand it, includes a condition that when I'm released as an indigent cripple, I will be deprived of health care for the rest of my life, and I just want to clarify whether that's -- I understand that felons who -- or ex-felons are not allowed to have handguns, for example, or perhaps vote in certain states, but I've never heard of an ex-felon being given a life sentence of no health care, so I just wanted to clarify whether or not that's properly within the rubric of punishment nowadays.

Id. at 9:22-10:25. After significant discussion of that issue, during which the government indicated that Ecker "may not be entitled" to Medicare benefits after his conviction, id. at 11:25-12:6, Ecker refused an offer of additional time to consider his guilty plea:

> THE COURT: All right. Well, that's -- the only job of the Court on these matters is to make sure there's been disclosure. I mean, Mr. Ecker, if you want more time to think about this plea, but clearly, one of the potential consequences of a conviction for Count 5, whether it's by your plea today or by a conviction down the road if you were to be convicted, is that you face that problem, and that's all I can tell you at this point. If you want more time to discuss --
> THE DEFENDANT: No, Your Honor, I don't.
> THE COURT: All right.
> THE DEFENDANT: I'd like to deal with this with as much brevity as possible.

Id. at 14:1-13.[3]

Other examples of Ecker's attention to detail during the plea hearing abound. Notably, Ecker prefaced a lengthy discussion of events mentioned in the Statement of Facts by remarking upon having "an ongoing issue with the dates, and as far as without going word by word, I think most of them have been corrected by the government." Id. at 33:15-17. Specifically, Ecker corrected a date in the first paragraph, see

---

[3] Ecker's rejection of the court's offer of additional time to consider his plea is particularly striking given the claim in his § 2255 motion that Ahmad could have mitigated her ineffective assistance by "ask[ing] the Court for additional time to allow [Ecker's] health to stabilize." § 2255 Mot. at 3.

9

id. at 33:18-35:6; indicated discomfort with language in the third paragraph, see id. at 35:7-24; clarified the timing, location, and other details of events described in the fourth paragraph, see id. at 35:25-36:24; noted that a two-year date range for conduct set forth in paragraph five was "not accurate specifically" because the range should have been "three months in '09 and '10," but that the paragraph was accurate "in spirit" and the issue was not "worth quibbling about," id. at 36:25-37:9; agreed that information contained in several other paragraphs was substantially correct, see generally id. at 37:15-40:17; and with regard to the quantities of drugs specified in the Statement of Facts, indicated that "[m]y understanding of the way the law is interpreted is that those amounts are correct," id. at 40:25-41:1. Ecker's extensive commentary during the plea hearing gave neither defense counsel nor the Court any reason to doubt his mental acuity or understanding of that proceeding. Addendum to § 2255 Mot. at 1.

In fact, the record shows that defense counsel was aware of Ecker's medical condition but believed that his condition did not impede the voluntariness of his pleas:

> THE COURT: Are you satisfied that Mr. Ecker is entering his guilty pleas in a knowing and voluntary fashion?
> MS. AHMAD: Yes, I am.
> THE COURT: And are you satisfied that his two pleas accord with your understanding of the facts and

10

circumstances and law that applies to this case?
MS. AHMAD: Yes, I am.
THE COURT: All right. Even though there is some slippage between the literal statement of facts and what the defendant is comfortable admitting in court today and that may or may not be an issue down at the sentencing hearing, certainly Mr. Ecker's admissions are, completely cover all the necessary elements of the offense -- both offenses, and I'm satisfied that Mr. Ecker has entered his two pleas in a knowing and voluntary fashion, that he's had the full advice of counsel in coming to the decision to plead guilty, and that the written statement of facts to the degree agreed to by the defendant is still more than enough evidence to find him guilty of Counts 1 and 5 beyond a reasonable doubt, so the pleas are accepted, and we need to set this case for sentencing.

Id. at 42:24-43:18. Defense counsel's awareness and concern about Ecker's medical condition is underscored by her statement after the guilty pleas were accepted that the defendant was not receiving the correct medications while in custody:

> MS. AHMAD: Your Honor, I would like to raise one more issue with the Court.
> THE COURT: Yes ma'am.
> MS. AHMAD: My client, as you understand, has been treated for some time for degenerative peripheral neuropathy, and as he has informed the Court today, he's in a great deal of pain and has been ever since he's been detained because he hasn't received the medications that he used to receive under the care of his doctor. I've informed the Alexandria Detention Center of this. I've informed the Marshals Service of this. I have provided them with medical documentation from his doctors -- former doctor. I've provided them with letters from his former doctor. When we appealed the detention decision to Judge Cacheris, he denied our request for bond, but in his order, he did instruct the Alexandria Detention Center to provide prescription medications to Mr. Ecker. He says in his order that the Alexandria Detention Center shall

11

>provide him with those prescription medications. I
>have forwarded that order to the Marshals Service, to
>the sheriff, and to the Alexandria Detention Center,
>and he's still only getting Motrin and sleeping
>medication. I just wanted to bring that to the
>Court's attention if there's anything that can be
>done.
>THE COURT: I think if one of my colleagues -- and
>Judge Cacheris is my senior colleague, a former chief
>judge of this Court. If he issued a clear order
>directing that proper medication be made available to
>this defendant, then if that's not being followed and
>if there's not a good reason for the failure to follow
>it, there may be a contempt issue, and you need to
>take that up, I believe, with Judge Cacheris. It was
>his order that's at issue. All right?
>MS. AHMAD: I'll do that, Your Honor.

Id. at 44:7-45:15.

In response to Ecker's § 2255 motion, Ahmad has filed an affidavit explaining her belief that Ecker's health problems did not render his plea involuntary. Specifically, she avers that although Ecker did tell her "that he was experiencing physical pain," he "was consistently coherent, assertive, and on-point in his communications with me, and with the Court, leaving me with no reason to believe that the pain affected his competence." Aff. of Aamra S. Ahmad ("Ahmad Aff.") [Dkt. No. 76], at § 9. Ahmad's affidavit describes "numerous" discussions with Ecker during which Ecker posed "informed questions," "independently reviewed discovery materials," discussed possible defenses and witnesses, and answered questions about the facts of the case. Id. During the plea colloquy Ecker admitted that he had

12

consulted with Ahmad about one issue in his case "at least a half-dozen times," Tr., June 16, 2010 at 12:25-13:1, and unequivocally approved of Ahmad's performance:

> THE COURT: Have you had enough time to explain everything you know about this case to your counsel?
> THE DEFENDANT: Yes, I have.
> THE COURT: Has she discussed with you the nature of these two charges and any ways in which you could defend yourself against the charges in Counts 1 and 5?
> THE DEFENDANT: I'm sorry, could you repeat that?
> THE COURT: Yes. Has Ms. Ahmad gone over with you the nature of the charges that you're pleading guilty to today, that's Counts 1 and 5, discussed -- and discussed with you the nature of these charges and any ways in which you could possibly defend yourself against them?
> THE DEFENDANT: Yes, at length.
> THE COURT: Are you fully satisfied with the way in which she has represented you in this case?
> THE DEFENDANT: Yes.

Id. at 26:23-27:13; see Fields, 956 F.2d at 1298 (rejecting ineffective assistance claim where movant stated during Rule 11 hearing that "I am very pleased with my counsel"); see also United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances . . . , allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" (citations omitted)).

For all these reasons, Ecker has failed to show that Ahmad failed in any respect to investigate or advocate on his behalf

with regard to his medical condition, or failed to prevent an involuntary plea. Because Ecker cannot substantiate deficient performance, this Court need not reach the issue of prejudice in dismissing his ineffective assistance claim. See Strickland, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").[4]

### 2. Failure to Research and Argue for Reduced Drug Weight in Sentencing Calculations

Ecker also argues that Ahmad was ineffective because she did not research or argue the issue of whether his personal consumption of prescription narcotics was adequately taken into account in the drug weight calculations used at sentencing. That claim is contradicted by the record, which shows that at the sentencing hearing Ahmad indicated that based on her research she believed that case law did not support such a challenge to the drug weights to which the defendant had agreed in the Plea Agreement:

> THE COURT: The drug quantities that are indicated in paragraph 15, do you have any dispute with that being a reasonable estimate as to the amount of drugs

---

[4] Even assuming that Ahmad was deficient because she failed to properly apprise the Court of Ecker's medical condition, Ecker's claim would be dismissed for lack of prejudice because the Court thoroughly examined him on that issue and was satisfied that Ecker entered a voluntary and intelligent guilty plea. Moreover, at no point in his motion does Ecker claim that he is innocent of the charges to which he pleaded guilty.

14

> involved in this case?
> THE DEFENDANT: One moment, Your Honor.
>
> (Discussion between Ms. Ahmad and the defendant off the record.)
>
> THE DEFENDANT: My understanding of the way the law is interpreted is that those amounts are correct.
> THE COURT: All right. Now, remember, in the plea agreement, you-all have agreed to that 34 offense level based upon drug quantities, right? Ms. Ahmad?
> MS. AHMAD: Yes, we have, Your Honor, and I'd just like to clarify a point that the Court may not be familiar with in respect to this case, and that is that the witnesses in this case have described a certain volume -- a certain drug quantity being purchased and sold, but there is significant case law out there that says that the amount of drug quantity that goes to personal use also counts against the defendant towards drug weight in a conspiracy case. So I think that Mr. -- the point that Mr. Ecker is trying to make is that he understands that this is how the law is and that because that's the way the law is written, it's appropriate for him to make the agreement that he's at offense level 34, but did they actually -- during the conspiracy, did they actually distribute an amount of drugs that would be the -- that would result in him being at a level 34? No, but the law is written that way.

Tr., June 16, 2010 at 40:19-41:20. Ecker's allegations to the contrary are not persuasive. Even if Ecker could show that Ahmad was deficient in this respect, he would be unable to make out a sufficient showing of prejudice because the sentence that was imposed on him was far below the guideline range for his

15

offenses.[5] For these reasons, this ineffective assistance claim also fails.

### 3. Failure to File a Notice of Appeal

Ecker's last argument is that Ahmad was constitutionally ineffective because she did not file an appeal after he directed her "on August 27, 2010, shortly after the sentencing," to file an appeal. He claims that instead she told him that he "had waived that right and could not [file an appeal]." § 2255 Mot. at 3.

Outside of his pleadings, and his self-serving affidavit, Ecker offers no evidence to support this argument. In fact, the record strongly supports the conclusion that Ecker did not unequivocally ask his counsel to file a timely Notice of Appeal. First, there is the tactical reality that his sentence of 120 months of incarceration was a significant variance from the 188 to 235 month guideline range identified in the Presentence

---

[5] As the government remarks, "in order for any variation in drug weight calculation to have any effect on the appropriate guideline range, petitioner would have to show that he personally consumed the majority of the 7480 hydromorphone, 2039 methadone 40 mg, 21,700 methadone 10 mg, and 920 oxymorphone pills, and only distributed a fraction of these drugs." Gov't's Answer in Opp. to Pet'r's Mot. Pursuant to 28 U.S.C. § 2255 ("Gov't's Answer") [Dkt. No. 76], at 13; see Presentence Investigation Report at 9. Citing Ecker's sentence of 120 months of imprisonment for distribution of the equivalent of between 3,000 and 10,000 kilograms of marijuana, the government also noted that his sentence was "well below the guideline range and commensurate with sentencing recommendations for between 400 and 700 kilograms of marijuana (Level 28)." Gov't's Answer at 13.

Investigation Report. Had Ecker breached his plea agreement by filing an appeal, the government could have cross-appealed the variant sentence. Second, in her affidavit, Ahmad flatly contradicts Ecker's claim, stating that after she informed Ecker about the likely effect of the appeal waiver in his Plea Agreement and that in light of that advice, Ecker decided not to direct her to appeal his case. See Ahmad Aff. at § 8.

Ecker clearly acknowledged during the plea colloquy that he understood that he was waiving his right to appeal his conviction and sentence:

> THE COURT: Normally in a criminal case, a defendant has the right to appeal the sentence imposed on him, but if you look at paragraph 6 of your plea agreement, this is on page 4, the second full sentence, beginning with the word "nonetheless," as part of this plea agreement, you are giving up your right to appeal your convictions for Counts 1 and 5, and you are also giving up your right to appeal any sentence or the manner in which the sentence was imposed as long as the sentence does not exceed the statutory maximum for the particular offense. That means therefore that as to Count 1, as long as the Court's sentence is not more than 20 years of imprisonment followed by three years of supervised release and is not more -- a fine is not more than $1 million and the special assessment is not more than $100, you cannot appeal the sentence for any reason. Do you understand that?
> THE DEFENDANT: Yes, I do.
> THE COURT: And as to Count 5, as long as the sentence of the Court does not exceed ten years of imprisonment followed by three years of supervised release and the fine is not greater than $250,000 and the special assessment [is] not greater than $100, you cannot appeal that sentence for any reason. Do you understand that?
> THE DEFENDANT: Yes, I do.

Tr., June 16, 2010, at 22:8-23:8. Ecker reiterated that understanding later in the plea hearing:

> THE COURT: And finally, if you pled not guilty and you went to trial and you were found guilty at trial, you could appeal that finding of guilt to a higher-level court. Now, do you understand that under the terms of the plea agreement as well as the way the law is structured, by being found guilty based upon your guilty pleas, you give up your right to appeal the convictions? Do you understand that?
> THE DEFENDANT: Yes.

Id. at 32:1-8.

This Court is fully aware of the Fourth Circuit's holding that an attorney who disregards a defendant's unequivocal instruction to file a timely notice of appeal is per se ineffective, even if the defendant waived his right to appeal, as Ecker did. United States v. Poindexter, 492 F.3d 263, 269-73 (4th Cir. 2007). Under Poindexter, an attorney renders ineffective assistance of counsel if he fails to follow an unequivocal instruction by his client to file a notice of appeal even if the defendant waived his right to appeal. Id. at 273. "[W]hen a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed." Id. at 272. In Poindexter, the Fourth Circuit vacated the judgment of a

district court that "declined to resolve the factual dispute concerning whether [the defendant] unequivocally instructed his attorney to file a timely notice of appeal." Id. at 267.

However, given the facts in this record, the Court finds that an evidentiary hearing would not assist the decisional process and would involve an unnecessary expenditure of valuable lawyer and judicial time as well as a waste of Marshals Service resources in having to transport Ecker to the courthouse for the hearing. Because the Court had the opportunity to observe Ecker's demeanor at his plea and sentencing hearings, and has had dozens of opportunities to observe defense counsel - who as an assistant federal public defender has appeared before this Court for years - a credibility finding can be made on the record already established. That record includes blatant contradictions between what Ecker alleges in his § 2255 motion and the statements he made under the penalty of perjury during his plea colloquy. These contradictions strongly undercut the credibility of his claim of unequivocally directing Ahmad to file a Notice of Appeal. Moreover, Ahmad's denial under oath of Ecker's allegation and her description of her normal practice when a client does direct that a Notice of Appeal be filed is extremely credible. See Ahmad Aff. at § 8. The track record of the Federal Public Defender's Office in aggressively representing their clients and filing appeals on their behalf is

well known to the Court. For all these reasons, the Court finds that Ecker has not sustained his burden of proof on his claim that he unambiguously directed his counsel to file a Notice of Appeal. Therefore, this claim of ineffective assistance of counsel will be dismissed without an evidentiary hearing.

III. CONCLUSION

For the reasons stated above, Ecker's § 2255 Motion will be dismissed by an accompanying Order.

Entered this 12th day of December, 2012.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge